UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CARL LABAT** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-7612** |
| **DARREL VANNOY, WARDEN** | **SECTION "H"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Factual and Procedural Background

The petitioner, Carl Labat ("Labat"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On June 24, 2010, Labat and a co-defendant, Sheena Edwards, were indicted by an Orleans Parish Grand Jury for the second degree murder of Travis Anderson.[3] Labat entered a plea of not guilty to the charge on August 20, 2010.[4]

The record reflects that, on the night of April 18, 2010 and the early hours of April 19, 2010, a disturbance erupted between Labat and Anderson, the victim, in the parking lot of Passions

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 8, Indictment, 6/24/10; St. Rec. Vol. 2 of 8, Grand Jury Return, 6/24/10.

[4]St. Rec. Vol. 1 of 8, Minute Entry, 8/20/10.

Gentleman's Club in New Orleans East.[5]  The altercation reportedly began when Labat slapped Anderson's girlfriend Stephanie, who was a dancer at the club.  The dispute between Labat and Anderson culminated in Rio Sandifer brandishing a shotgun as he and Anderson stood outside the nightclub challenging Labat to come outside.  The situation was temporarily diffused when someone drove Labat's Ford F-150 truck to the door of the nightclub, and Labat got in and left, along with his girlfriend, Sheena Edwards, who also was a dancer at the club.

Soon after, Sandifer, his sister Alexis, and Anderson's sister Sunny, left the club and went to the apartment which they all shared with Monica Edgar, another dancer from the club.  Soon after the three returned to the apartment, Edwards arrived and began shouting at Sandifer to come outside.  While Sandifer and Sunny remained in the apartment, Alexis and Monica escorted Edwards back outside to try to calm her down after Alexis noticed that Edwards had a gun hanging out of her purse. While the three women were in the parking lot of the apartment building, Alexis saw Labat standing off to the side trying to put a clip into a handgun.  Edwards soon ran back upstairs to exchange words with Sandifer, and Labat walked over to Alexis in the parking lot, voicing threats towards her brother and Anderson.  Alexis called Anderson and warned him not to come to their apartment.  Labat and Edwards soon drove off.

About 20 minutes later, Alexis received a call informing her that Anderson had been shot at the IHOP, which was directly across the interstate from her apartment complex.  She drove there and told the police officers on the scene that Labat and Edwards had just left her apartment where they had made threats against Anderson.

---

[5]The facts were taken from the published opinion of the Louisiana Fourth Circuit Court of Appeal on direct appeal.  *State v. Labat*, 115 So.3d 665, 668-71 (La. App. 4th Cir. 2013); St. Rec. Vol. 7 of 8, 4th Cir. Opinion, 2012-KA-1210, pp. 6-10, 4/24/13.

Edwards eventually entered a guilty plea to the amended charge of accessory to second degree murder, on September 6, 2011, and was sentenced to serve 18 months at hard labor.[6] Prior to that, Labat was separately tried before a jury on August 23 through 26, 2011, and was found guilty as charged.[7] At a hearing held December 14, 2011, the Trial Court sentenced Labat to serve life in prison at hard labor without benefit of parole, probation, or suspension of sentence.[8]

Labat's retained appellate counsel asserted to the Louisiana Fourth Circuit that the evidence was insufficient to support the conviction and to prove that the shooting was not in self-defense.[9] On April 24, 2013, the Louisiana Fourth Circuit affirmed Labat's conviction and sentence finding the claim meritless.[10] Labat's conviction and sentence became final thirty (30) days later, on May 24, 2013, because he did not file for rehearing or seek review in the Louisiana Supreme Court. *Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008) (citing *Roberts v. Cockrell*, 319 F.3d 690, 693 (5th Cir. 2003) (appeal is final when the state defendant does not timely proceed to the next available step in an appeal process).

---

[6] St. Rec. Vol. 1 of 8, Indictment, handwritten amendment, 9/6/11; Edwards's Plea Minutes, 9/6/11; Edwards's Waiver of Rights, 9/6/11.

[7] St. Rec. Vol. 1 of 8, Trial Minutes, 8/23/11; Trial Minutes, 8/24/11; Trial Minutes, 8/25/11; Trial Minutes, 8/26/11; Jury Verdict, 8/26/11; St. Rec. Vol. 3, Trial Transcript, 8/23/11; St. Rec. Vol. 4 of 8, Trial Transcript (continued), 8/23/11; Trial Transcript, 8/24/11; St. Rec. Vol. 5 of 8, Trial Transcript, 8/25/11; St. Rec. Vol. 6 of 8, Trial Transcript, 8/26/11.

[8] St. Rec. Vol. 1 of 8, Sentencing Minutes, 12/14/11; St. Rec. Vol. 6 of 8, Sentencing Transcript, 12/14/11. Before the sentencing, the Trial Court determined that no motion for new trial had been filed. A week later, on December 21, 2011, a motion for new trial signed by Labat's former, retained trial counsel was received by the clerk of court and placed into the record without an order for the court.

[9] St. Rec. Vol. 7 of 8, Appeal Brief, 2012-KA1210, 9/10/12.

[10] *Labat*, 115 So.3d at 665; St. Rec. Vol. 7 of 8, 4th Cir. Opinion, 2012-KA-1210, 4/24/13.

3

Over 22 months later, on April 16, 2015, Labat through retained counsel filed an application for post-conviction relief in the Trial Court asserting that Labat was denied effective assistance of appellate counsel on the following grounds: (1) counsel failed to exhaust review of the direct appeal in the Louisiana Supreme Court; and (2) counsel failed to assert issues on appeal challenging the Trial Court's overruling of the defense objection to the admissibility of the crime scene video without prior notice, the State's objection to the testimony of Edwards's attorney, and the State's objection to the defense questions asked to Deputy Richard Smith related to Edwards's complaint of harassing phone calls.[11]

After receiving additional briefing, on October 7, 2015, the Trial Court denied relief finding that Labat's claims were speculative as to the likelihood that the claims would have been successful in the circuit court or that the Louisiana Supreme Court review would have been successful.[12]

Labat's counsel filed a writ application with the Louisiana Fourth Circuit, and the Court denied relief on February 23, 2016, finding that Labat failed to show deficient performance by appellate counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), and related state case law.[13]  On May 12, 2017, the Louisiana Supreme Court denied Labat's counsel-filed writ application finding that Labat failed to show that the claims were stronger than the one presented on direct appeal or that the claims would have prevailed on appeal, citing *inter alia*, *Smith v.*

---

[11]St. Rec. Vol. 8 of 8, Application for Post-Conviction Relief, 4/16/15; St. Rec. Vol. 1 of 8, Docket Entry, 4/16/15.

[12]St. Rec. Vol. 8 of 8, Trial Court Judgment, 10/7/15; State's Response, 7/22/15; Traverse, 9/9/15.

[13]St. Rec. Vol. 8 of 8, 4th Cir. Order, 2015-K-1331, 2/23/16; 4th Cir. Writ Application, 2015-K-1331, 12/14/15.

*Robbins*, 528 U.S. 259, 288 (2000), or that appellate counsel was ineffective for failing to seek discretionary review after direct appeal, citing *Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982).[14]

## II.     Federal Petition

On August 4, 2017, the clerk of this Court filed Labat's federal petition for habeas corpus relief in which he asserted that he received ineffective assistance of appellate counsel when his retained appellate counsel failed to exhaust state court review by not seeking supervisory writs and failing to raise other viable claims on appeal challenging the admissibility of the crime scene video and the Trial Court's sustaining of the State's objections to the testimony of Edwards's attorney and questions to Deputy Smith.[15]

The State filed a response in opposition to Labat's federal habeas petition asserting that the claims are without merit and he is not entitled to federal habeas relief.[16]  Labat filed a traverse to the State's opposition re-urging the merits of his claims.[17]

## III.    General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[18] applies to this petition, which is deemed filed in this Court no later than

---

[14]*State v. Labat*, 219 So.3d 319 (La. 2017); St. Rec. Vol. 8 of 8, La. S. Ct. Order, 2016-KP-0549, 5/12/17; La. S. Ct. Writ Application, 16-KP-549, 3/23/16.

[15]Rec. Doc. No. 1.

[16]Rec. Doc. No. 10.

[17]Rec. Doc. No. 11.

[18]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes

August 4, 2017.[19]   The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

In its opposition response, the State tentatively writes one sentence regarding the timeliness of Labat's petition: "Upon a thorough review of the record and applicable law, Labat's federal *habeas* petition appears to have been timely filed."  The State, however, did not discuss the applicable law or outline its calculation of the limitations period; in fact, the State said nothing more about the subject at all.  Had the State done so, it would have been clear (not just "appear") that Labat's federal habeas petition was not timely filed.

The State's erred and tenuous statement does not constitute a clear and express waiver of the limitations defense.  The Fifth Circuit has held that where there is no express waiver, the district court may, in its discretion, raise the affirmative limitations defense *sua sponte*.  *Day v. McDonough*, 547 U.S. 198, 209-10 (2006) (addressing limitations). When the Court exercises its discretion to do so *sua sponte*, it must assure that the petitioner has notice that the issue is being considered.  *Fisher v. Texas*, 169 F.3d 295, 301 (5th Cir. 1999); *Magouirk v. Phillips*, 144 F.3d

---

become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[19]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The official stamp from the prison indicates that Labat delivered his pleadings to the legal department on August 4, 2017, for electronic mailing to a federal court.  The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his *pro se* petition.  *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002).

348, 358 (5th Cir. 1998). Therefore, Labat is hereby given express notice that the Court is considering the timeliness issue of his federal petition. Accordingly, Labat is hereby specifically instructed that this report and recommendation is notice to him that this court is *sua sponte* raising the issue of timeliness and that petitioner must submit any evidence or argument concerning the default as part of any objections he may file to this report. *Magouirk*, 144 F.3d at 348.

For the reasons that follow, the Court finds *sua sponte* that Labat's federal habeas petition was not timely filed and must be dismissed with prejudice for that reason.

## IV.     Statute of Limitations

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[20] *Duncan v. Walker*, 533 U.S. 167, 176-80 (2001). As stated above, Labat's conviction was final under federal law on May 24, 2013, when he did not seek discretionary review of his direct appeal. Pursuant to § 2244, Labat had one year from that date, or until Tuesday, May 27, 2014,[21] to timely file a federal application for habeas corpus relief which

---

[20]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
    A.    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
    B.    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
    C.    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
    D.    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. 28 U.S.C. § 2244(d).

[21]The last day of the filing period fell on Saturday, May 24, 2014. The next business day, was Tuesday, May 27, 2014. The calendar reflects that Monday, May 26, 2014, was Memorial Day, a federal and state holiday. The

he did not do.  Thus, literal application of the statute would bar Labat's petition as of that date unless he is entitled to tolling as provided for under the AEDPA.

### A.     Statutory Tolling

Section 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation.  *See* 28 U.S.C. § 2244(d)(2).  In order for a state post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing.  *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Williams v. Cain*, 217 F.3d 303, 306-08 & n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 468-69 (5th Cir. 1999), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999).  For purposes of the AEDPA, a timeliness calculation in Louisiana requires the application of the prison mailbox rule to state pleadings.  *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).  The Court has applied this rule in presenting the procedural history recited above.

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'"  *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999)) (finding that a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

---

deadline therefore fell to the next business day.  *See* La. Code Crim. P. art. 13 (weekends and holidays not included in calculation when it would be the last day of the period).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (finding that a state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310, 316 (3d Cir. 2001), *overruled on other grounds by Carey*, 536 U.S. 214 (finding that a motion to withdraw a guilty plea is "other collateral review").  A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition.  *Godfrey v. Dretke*, 396 F.3d 681, 687-88 (5th Cir. 2005).

In Labat's case, the AEDPA filing period began to run on May 25, 2013, the day after his conviction and sentence were final under federal law.  The one-year AEDPA filing period continued to run uninterrupted from that date for one year, until Tuesday, May 27, 2014, when it expired.  Labat had no properly filed application for state post-conviction or other collateral review pending in any state court during that time period.  His federal petition was filed under the federal mailbox rule on August 4, 2017, and therefore was not timely under the AEDPA.

Labat's only properly filed state post-conviction application was filed by his retained counsel on April 16, 2015, which was more than ten months after the AEDPA filing period expired. A filing made after the expiration of the AEDPA one-year filing period does not renew or extend the AEDPA filing period or provide a petitioner any tolling benefits. *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000); *Higginbotham v. King*, 592 F. App'x 313, 314 (5th Cir. 2015).

9

Thus, Labat's federal petition deemed filed on August 4, 2017, was filed over three years and two months after the AEDPA filing period expired on May 27, 2014. Labat's federal petition was not timely filed and should be dismissed with prejudice for that reason.

### B.    No Equitable Tolling

The post-AEDPA jurisprudence also provides for equitable tolling where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus. *Pace*, 544 U.S. at 418; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810-11 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. *Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002).

Equitable tolling has only been extended under extraordinary circumstances outside the control of the petitioner. *See Holland v. Florida*, 560 U.S. 631, 652-53 (2010) (finding that equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests to timely file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); *Hardy v. Quarterman*, 577 F.3d 596, 599-600 (5th Cir. 2009) (finding that equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002) (finding that tolling was warranted when defendant was deceived by attorney into believing that a timely motion to vacate

was filed); *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (quotation omitted) ("A garden variety claim of excusable neglect does not support equitable tolling."); *Fisher*, 174 F.3d at 715 (finding that tolling is not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); *Cantu-Tzin*, 162 F.3d at 300 (finding that State's alleged failure to appoint competent habeas counsel did not justify tolling); *Davis*, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended the deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

Labat has not presented, and the record does not demonstrate, any basis for extending the extraordinary remedy of equitable tolling to the § 2244(d) calculation. To the extent Labat claims he was abandoned or misled by his retained appellate counsel, his arguments are not compelling. The Court first notes that the affidavit purportedly from Labat's aunt is not found to be credible.[22] The relevant portions of the affidavit do not address matters within the affiant's personal knowledge, such as what the retained attorney knew or mailed to Labat or what Labat knew or received through the prison mail system.

Similarly, Labat's statements also misrepresent the facts and are not credible. For example, on page six of his brief in support of the habeas petition, Labat claims he did not learn that his appellate attorney did not file a Louisiana Supreme Court writ application until 18 months after his appeal was decided. The record itself reflects that within 16 months after his conviction was affirmed by the Louisiana Fourth Circuit, Labat retained state post-conviction counsel who

---

[22]Rec. Doc. No. 1-2, p. 146.

11

enrolled as counsel of record in the state court, although he did not file Labat's state post-conviction application until April 16, 2015.

Furthermore, the Court is not swayed by Labat's contention (or that of his prior state court counsel) that his appellate counsel had an ethical or contractual obligation to file a supervisory writ in the Louisiana Supreme Court when she agreed to file "an appeal." Louisiana law is clear that a direct appeal in a case like this may only be taken to the intermediate circuit appellate court. *See* La. Const. Art. 5 §10(A); La. Code Crim. P. art. 912.1(B)(1). Following this appeal, any review by the Louisiana Supreme Court is discretionary and done by supervisory writ application, which is not a right or mandated part of the direct appeal. *See* La. S. Ct. Rule X§5. In denying Labat post-conviction relief, the Louisiana Supreme Court verified this with its citation to *Torna*, in which the United States Supreme Court found no denial of a constitutional right when the petitioner's attorney failed timely to seek discretionary review after his direct appeal. 455 U.S. at 587-88 (citing *Ross v. Moffitt*, 417 U.S. 600 (1974)).

The Court takes further notice that it is rare for this Court on habeas review to see in a state court record that a supervisory writ application to the Louisiana Supreme Court after direct appeal was filed by counsel, the great majority being filed *pro se* by the criminal defendant. Nevertheless, even if there were some negligence on the part of Labat's former counsel or Labat himself, this would not constitute the type of extraordinary circumstances previously recognized by the precedent cited above that would warrant equitable tolling. *See Id*. The record instead reflects simply that the petitioner did not timely pursue federal habeas relief.

Labat is not entitled to equitable tolling. His federal petition deemed filed on August 4, 2017, was not timely filed and must be dismissed with prejudice for that reason.

12

### C.      No Relief Available Under *Martinez*

Should Labat choose to respond to this report, he has no other grounds to excuse his untimely federal petition assertion of ineffective assistance of appellate counsel claims. The United States Supreme Court's holdings in *Martinez v. Ryan*, 566 U.S. 1 (2012) and *Trevino v. Thaler*, 569 U.S. 413 (2013), do not provide a basis for review of this untimely filed federal petition or his ineffective assistance of appellate counsel claims. In *Martinez*, the Court held that a state court imposed "'procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [State's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.'" *Trevino*, 569 U.S. at 429 (quoting *Martinez*, 566 U.S. at 17) (emphasis added). The bar to review at issue here arises from petitioner's failure to meet the federal limitations deadline under the AEDPA. The *Martinez* and *Trevino* decisions do not address or provide an excuse for the untimely filing of a federal habeas petition. *See Arthur v. Thomas*, 739 F.3d 611, 631 (11th Cir. 2014) ("Thus, we also hold that the reasoning of the *Martinez* rule does not apply to AEDPA's limitations period in § 2254 cases or any potential tolling of that period."); *Smith v. Rogers*, No. 14-0482, 2014 WL 2972884, at * 1 (W.D. La. Jul. 2, 2014); *Falls v. Cain*, No. 13-5091, 2014 WL 2702380, at *3 (E.D. La. Jun.13, 2014) (Order adopting Report). These cases also do not constitute new rules of constitutional law made retroactive on collateral review that would start a new one-year filing period under the AEDPA. *See In re Paredes*, 587 F. App'x 805, 813 (5th Cir. 2014) (". . . the Supreme Court has not made either *Martinez* or *Trevino* retroactive to cases on collateral review, within the meaning of 28 U.S.C. § 2244."); *Adams v. Thaler*, 679 F.3d 312, 322 n.6 (5th Cir. 2012).

For these reasons, neither *Martinez* nor *Trevino* provide this petitioner a basis for relief from the failure to meet the AEDPA's limitations period. Labat's untimely federal petition must be dismissed.

## V.     Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Labat's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[23]

New Orleans, Louisiana, this 28th day of June, 2018.

_____
**KAREN WELLS ROBY
CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[23]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.